Case No. 24-2159 from the District of Minnesota, Berkley Regional Insurance et al. v. Amazon.com. Good morning, judges. My name is Patrick Hess. I represent the plaintiff in the case, the appellate. I'm with Jenna Mahoney from my office today. In predicting whether the Minnesota Supreme Court would or would not apply strict product liability to Amazon, we are blessedly provided with a couple of undisputed guideposts. One of those is the fundamental goal that lies behind the doctrine. Another is a third statement of retorts for product liability, specifically Section 20. What's the fundamental purpose of the doctrine? To protect consumers from harm. Harm from unsafe products. To provide them recourse against somebody when they've suffered an injury from an unsafe product. Protect consumers from harm. What's the fundamental mechanism for achieving that goal? It's to shift that risk to somebody else, specifically to shift the risk to the parties that can exert pressure upstream to pressure manufacturer sellers to sell and provide safer products. I want to be sure that I understand. Weren't you also arguing, though, that it's pretty – that Minnesota law is unclear as well and that we should certify it? But I hear you saying we have two really good guideposts that should guide us. Sort of which is it? Sure. I think it's both, Judge. I started with those and I focused on those because they're clear. They're undisputed, right? Whereas Minnesota's case law in discussing product liability overall, but in particular as it applies to non-sellers, is less developed than some other states have been. And so I think there are gaps in the Minnesota's case law that don't exist in those other guideposts. There's no gaps in the underlying policy. There's no gaps in the third statement about who the doctrine applies to or doesn't apply to. Well, the odd part about this – so we went back and looked at the states that had addressed this, and it's not quite, but it's almost an even split between liability and no liability. It's something like 4 to 3 or 5 to 4. I can't remember the exact breakdown. But the other side says it's clear. You say it's clear. The courts definitely don't think it's clear. Yeah. And discussing the other jurisdictions that have reached the specific issue, I think there's a statement in the brief to the effect of the great majority of cases swing their way. There's a different case that says not so fast. That was kind of too early on, but things have changed over time. But I can tell you from looking at those cases many, many times, there's some common principles you can find in those cases, some consensus you can find in those cases. One thing to never forget is, in the historic context of this law, this doctrine, it began with applying only to sellers, right? The 1964 going forward to 87 when the third restatement comes along. Well, and that's the only one the Minnesota Supreme Court has actually adopted in this context. It's the second. We don't even know if they would adopt the third. I think this court's predicted that they would adopt the third or apply the third, and certainly the Minnesota Court of Appeals has said that since the third was passed in 87 or promulgated in 87, that's been their guidepost for the issue. But back to those other states and other jurisdictions and what they've said about the issue, if you look at states that focus on sales and say that this doctrine applies to Amazon as decided by whether or not there's been a sale, and specifically states that strictly adhere to the passage of title as a precondition to finding a sale, then you will rule out many of the cases that are in their favor and I don't think that are applicable here. Some of those same cases, for example, the Ohio Supreme Court and Steiner and the Erie decision, they acknowledge that issue, they rule in Amazon's favor because there was no passage of title, but they then go on to say, if you look at the guidepost that I talked about, those clearly point in favor of finding Amazon to be subject to the doctrine. So you think they're a seller, not a distributor, or you think they're both? I think that there's a tough, there's a challenge with calling them a seller, right? And the challenge is what I just discussed, because there's a tension, and I feel that tension, too, about how do you call them a seller if they never take title of this thing and then move it along down the chain of distribution? That tension existed in the law, broadly speaking, from 64 until 87, and courts sort of dealt with it one of two ways. One way they dealt with it was to sort of stretch the definition of seller, right? We're going to call a lessor a seller, we're going to call a bailor a seller. Other courts said, let's look at the guidepost, it's undisputed without any gaps to it, which is the fundamental goal behind this doctrine in the first place. And they said, let's call a lessor a seller, let's call a bailor a seller, because that makes sense, given this fundamental guidepost. So the restatements I've talked about, I would direct the Court's attention to comment A to subsection 20 in the third restatement. It gives a nice history, kind of on the issues we were just talking about. How did the law evolve from 64 to 87? And that tension I just talked about, the guidepost of the underlying policy that I just talked about. And then I want to focus the Court's attention on subsection 20B. So if you're questioning, do I call them a seller or a distributor? They're clearly a distributor. I think they otherwise distribute in the third restatement, subsection 20B. They have a longer term, which is tough to use in an oral argument, but it's a commercial non-sale product distributor. I'm just going to call them a commercial non-seller, so I don't tip over my tongue too many times. So what do you do, though, on that point? So in B, in a commercial transaction other than a sale, and it modifies distributes. And even though Amazon may not be the seller, it does happen as, quote, you know, well, it does happen in a sale. It's not other than a sale. It's part of a sale. And so that's why I'm kind of at sea here because I'm not sure what to do with that. Yeah, I think it's fair to be at sea at that. They're either A, a subsection A, or they're a subsection B. And subsection A requires a sale. And subsection A, the Minnesota Supreme Court might find, requires a transfer of title. I don't know what they would say about that. I'm not so sure you're right about that. I'm not sure it has to be A or B because if you look at A, one transfers ownership. And so Amazon is not the one transferring ownership. So if you look at it, it feels to me like Amazon just falls through the gaps. But I want to give you a chance to respond to that. Yeah, thank you. Amazon has taken a place by design of the traditional wholesalers and retailers that stood between consumers and manufacturers upstream, historically. Amazon, by design, did that. As discussed in Erie, the House Supreme Court, Oberdorf, several other cases, they've noted that the fundamental goal, mechanism, of having somebody exert pressure upstream doesn't exist in Amazon situations because by design they've removed those players from the field, taken their place, and performed all of the functions that those retailers and wholesalers used to perform, but for one, passing the title. And so in that sense, they're very close to a retailer, but not quite under A. And in that sense, you could say B are just a distributor. They seem like they're more than that. And I agree wholeheartedly. They are more than that. So if examples of B include lessors and bailors, and we ask ourselves, as between Amazon on the one hand and lessors and bailors on the other hand, which of those entities is in the best position to exert upstream pressure on people to make sure that they sell safe products or make safe products, who is between Amazon and a lessor or a bailor is in a better position? I would suggest, as several courts have found, that Amazon is in a unique position to protect consumers from unsafe products by exerting that upstream pressure, absorbing the cost of these injuries, and passing those costs along upstream. I would ask the court, what company on the planet, frankly, is in a better position than Amazon to do just that? Well, that can be. I mean, I get that. They don't have to put these products on their website. They could say, no, this is unsafe. You can't sell this here anymore, and bar the seller. But on the other hand, I mean, it's hard for them to say, oh, yeah, this battery is no good, right? They're not going to test each and every product to know whether or not it's a bad product. Yeah, this is not a situation like a manufacturer might sort of take a sample size out of a group of widgets they're making and say, you know, we're going to test these for kind of safety purposes. I'm not asking that or suggesting that. But I acknowledge or recognize that Amazon's got this massive market that it controls access to. Fair. They hold the keys to this massive market, and they dictatorially decide who comes in the market and who doesn't. So what are practical things that Amazon could do to prevent the sale of unsafe products on its site? They could ask that the sellers provide, give me a UL certification for this product. They could say, make sure that you're insured. Make sure you're, you know, subject to the courts of the United States of America. Things that wholesalers and retailers traditionally did and Amazon doesn't do. They have the right to do it. Whether they exercise that right or not is up to them. And if they turn a blind eye to it because that means cheaper stuff can come in, they can sell more stuff. You know, it can't be, I want all the profits of a wholesaler and retailer and none of the risks. And one of those risks is eating the cost of injuries in situations like this. If not for them, who else is filling that role? In Minnesota, I wonder if it's true because in Minnesota, don't they ultimately, aren't they ultimately able to avoid liability by identifying the manufacturer? Judge, you must be referring to the seller's exception statute? Exactly. And therefore, maybe they wouldn't have that incentive in a normal case. I understand that didn't happen in this case. Yeah, yeah, yeah. So the seller's exception statute, Minnesota Statute 544.41, provides non-manufacturing defendants in cases, product liability cases, a process that's simple and straightforward that allows them to be dismissed from the case. Subdivision 1 says, in any product liability action based in whole or part on strict liability and tort, commenced or maintained against a defendant other than the manufacturer, that party shall, upon answering or otherwise pleading, file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury. That did not happen here. When that's done, they have an obligation, a duty under that same statute, to exercise due diligence to correctly identify to the plaintiff who that manufacturer is. Here, in their initial disclosures, not a certification, not triggering the statute. But I guess my point is, in most cases, they would follow that procedure. So doesn't that sort of take away the incentive that Amazon would have to make sure that the products are safe or insured or whatever, all the other litany of things you mentioned? I'm not sure what you're asking, Judge, like a variability between the uniform distributors? Well, I think part of your argument is that ruling your way gives an incentive for Amazon to make sure that consumer products are safe, right? And I guess my slight pushback to that is, in light of this statute we've been discussing, doesn't that, in most cases, not in this case, obviously, but in most cases, doesn't that minimize the incentive that Amazon would have to make sure that the consumer products, because they're going to get out of it just by filing the affidavit. I understand the question better. Thank you. I would suggest respectfully no, because the goal and the mechanism are what they are, protect them from unsafe products and then provide a recourse against somebody. And under that statute, it follows that goal and follows that mechanism in that if a non-manufacturer is brought into a product liability case and they certify the manufacturer's identity and that party is then brought before the court and has got the means to pay a judgment, then they can get dismissed. But up until that point, they don't get to get dismissed. If Amazon brought that person to the court, if Amazon identified them in a certification and we held them in the court, they were subject to the court's jurisdiction and they got money in their pockets, then they could go free. So, yes, in that sense, Judge, you're right, there could be a situation different than this where Amazon wouldn't feel the pinch or bear the cost because somebody else stepped into the breach. But here, that didn't happen. Mr. Hess, I see you're well into your rebuttal. Would you like to reserve some or continue? I'll reserve the rest of my time. Thank you. Thank you. Thank you, Your Honors. Greg Miller on behalf of defendant Appelli, Amazon.com, Inc. May it please the Court. In the nearly 60 years since Minnesota first adopted the doctrine of strict products liability, every Minnesota decision has confirmed that the doctrine is limited to the manufacturer and the actual seller of the allegedly defective product. I'll jump right in, Judge Strauss, to get to your question about certification. There's two kind of points I'd like to address. First, the standard that this Court has adopted and why it's clearly not met here, and then we can talk about, if you don't mind, the underlying split that you mentioned. I would respectfully disagree with the count that your chambers has come up with. Here, I think the lexicon decision that this Court issued, when you have an alternative request for certification, there has to be a heightened standard for certifying that needs to be met. When you have a strategic decision, where, as you said, Judge Strauss, it creates a real problem for the Court, where you take this position where you say, well, absolutely, there's enough guideposts. But if you don't quite agree with us on how those guideposts come out, then you should certify it. Rewarding that kind of hedging of behavior is not good for the Court, and it's not good for the development of the law. That may be, but I've got to be honest with you. I'll just lay my cards on the table. I sat on that Court for seven and a half years. I've seen many Minnesota statutes and contracts and strict liability cases. I don't have the foggiest clue what the Minnesota Supreme Court would do with this. I don't. I know how I would have decided. I'm not going to tell you, but I have no clue what the Minnesota Supreme Court would do with it. And I would respectfully indicate that the case law has to be the guidepost for how you decide that decision here. And both the holdings and the reasonings deployed by all of the intermediate courts all say the rule is manufacturer or seller. If you're providing a service, you're out. And we're not going to engage in any of this kind of factor-balancing tests in order to decide whether or not maybe we should expand the definition of seller. One other case that I think... I think what you were arguing a second ago was that this is some... By trying to certify now that they're engaging in some sort of strategy that since they didn't... But didn't they ask for certification in the district court? They brought a motion in the district court, yes. But what this Court said in Lexicon... Okay, so that's less like a, you know, a strategy of, well, we lost, so we'll take it. I would agree that it's not as much of a gamesmanship as, like, we've got an adverse decision and now let's ask for the second bite of the apple. But the Lexicon decision in the footnote that we cited gives two separate reasons why they were requiring a heightened showing in order to certify. And the second one was because certification was requested in the alternative. I want to get back to the DOMA-GALA decision that we cite in the briefs. In retrospect, I wish we would have said a little bit more about the actual facts of the case. There you had a skid-lift operator who was sued by the individual that he was doing work on his home for, and a products liability theory was raised by the plaintiff's counsel, and the court just said, back of the hand, if you're not the manufacturer or the seller, we're not going to engage in this. So I would say, in terms of, to even have a thought about certifying, you would need to be able to say somewhere in the case law there's a question about what the parameters of the rule are and how we go about applying that rule. And I would refer you to the Oberdorf certification order that the Third Circuit issued. What they said at the beginning is they say, we have these two decisions from the Pennsylvania Supreme Court. One looks like it's a one-step analysis. Just, we'll apply these factors and ask, are you a seller? And there's one that looks like a two-step analysis. Are you a seller? And if you are, then we'll apply this four-factor test about whether we should extend strict liability to you. There's no ambiguity like that here in the Minnesota case law. All of the holdings are no liability. There's no concern about whether or not anyone is falling through the gaps. And I think it's very important to take in, to look at the fact that the Minnesota legislature has never acted in response to disagree with any of those decisions, to amend the seller exception statute, or to adopt a strict products liability regime that would in any way offer a remedy in those sorts of situations. There is no signal coming from the courts or from the legislature that there is a need to expand liability. In fact, the problem, though, is this case is not like the other. Even, I remember the Domegala case, and it's not like that because Amazon's a little bit of a hybrid. It looks like a seller to the consumer. I understand that there's always, but you go to the Amazon site, you press add to cart, you check out. I mean, that's what sellers do. They look a little like a distributor because they have these warehouses, including one in Minnesota, where they keep the products. I just don't, that's very, very unlike the Domegala case. So I'm just not sure what they would do with this hybrid. You may be right. They may say it stops here, no seller, no distributor, you lose. But I don't know what they would do with the hybrid Amazon thing. Well, so, I mean, to be clear, a distributor is under the restatement, and then also under the case law deploying the second restatement. It is, that is basically a term of art that was developed to address the kind of ambiguity that had been created where 402A originally uses the term seller, and then courts start expanding strict liability to lessors and other commercial entities that are functioning like a seller but don't quite meet that definition. And the third restatement went and kind of clarified that. But Minnesota, all of the case law says that the important thing is, are you sourcing the product? The Morris v. Goodwill decision, which we cited, there was an attempt where they tried to sue Munsingware. Apparently, it's not just vacature, but sometimes they get sued by private entities as well. And the court deployed the standard for being a seller under the restatement and then the ancillary question of, are you in the business of selling? And they said, all that's in the record is that Munsingware sold this set of racks to Goodwill. It didn't do any sort of multi-factor analysis. There's nothing that looks like what they're asking you to do. And I think kind of to sort of pivot back or ask is, what is the rule that they are proposing? Or even what is the standard? There is no clear standard that they're articulating to you. And I think that gets back to another reason why this would not be a good certification vehicle, even if there was some clarity that might be needed in the future, is they are not proposing anything other than they have kind of a conglomeration of things that Amazon does. They don't tell you what the effects would be on other entities that facilitate sales in similar ways, what the scope of that rule would be, what the economic impact of that would be. And I think that's a really important caution against going ahead and certifying. What about the fact, though, you know, I have to take a little bit, but this is sort of a unique case in another way, which is Amazon has a really dominant market share. I mean, you know, in terms of online retailers, there's nobody like Amazon. And one wonders whether that creates an issue of statewide importance for the State Supreme Court, given how many consumers shop at Amazon. I think almost everybody, different people shop in different amounts, but I think almost everybody shops at Amazon. Well, respectfully, Your Honor, this isn't in the record, but having a wife who has Timu orders delivered every week or so, especially with Halloween coming up, Amazon is not the dominant force that they try to claim it is. There are lots of retailers that are moving in a different area. But to go to the statewide question, there is not a single prior case or active case in any of the Minnesota courts involving Amazon. This is, I have been representing Amazon since 2019. This is the only case that we have had in Minnesota. So it is not an issue that is crying out for any resolution. It will not serve judicial economy. It would actually just unduly burden the courts in deciding an issue that is not percolating throughout the courts. And if you look at how they framed it, it is going to be argued in a very narrow way, where they are only raising a claim of strict liability. There is no negligence claims. There is no consumer statute claims. There is nothing that would flesh out fully what Amazon's duties might be with respect to third-party seller products. And then there are additional vehicle problems of it is not certain whether or not the manufacturer is or isn't actually available, where there is at least a quasi-advisory opinion that is being issued. But to get back to your question to my friend on the other side about the split, I would respectfully suggest that it is 7, 3, and 1. And all of the relevant decisions are in the 7 on our side. We have on the holding that Amazon is not a seller, we have the District of Arizona affirmed by the Ninth Circuit, the Western District of Kentucky, the Erie decision by the Fourth Circuit applying Maryland law. I would put New York in our column because there is one unpublished trial court opinion which was then repudiated by the intermediate court decision from the New York State Court, which under an Erie prediction is the relevant data. There is the Supreme Court of Ohio, and then we have the Sixth Circuit's decision out of Tennessee, and then the Supreme Court decision from Texas. So we have seven jurisdictions, and those are the jurisdictions that are applying 402A and that are applying statutory language, which follows more closely the standards that the second restatement and the third restatement have deployed. On the imposing liability side, we have California, which by the Bolger decision's own language is kind of doing its own thing, and Minnesota does not follow California tort law for the most part. I believe it's Ferguson where they repudiated the line product liability exception for the California Supreme Court. So not relevant data whatsoever. Even further afield, we have Louisiana, which is applying the Napoleonic Code, and a definition of possession under that statute, which has no relevance here. In fact, the Minnesota Courts of Appeals have told you possession is irrelevant when it comes to imposing strict liability, and then the Wisconsin statute is construed by the Western District of Wisconsin, and then on the one side we have a mix in New Jersey. I think it's also important to note that e-commerce has been around for 25 years. This isn't something that's completely newfangled, and this decision has been litigated starting in about 2018, and we have no states that have passed any sort of statutes imposing liability on Amazon and other facilitators of sales. And if we're going to do that, it would need to be legislatures that are doing that because they can hold hearings, they can consider all of the different entities that might be affected and tailor targeted solutions and mechanisms that would allow liability to be imposed in an effective way, not sort of the ham-fisted way that courts might adopt one rule and then they might have to scale it back depending on how it turns out. There's really nothing in both this court's standard for certification or in the Minnesota case law that would indicate that there's a need to certify right now. So I think you've got a reasonably good argument on seller. What about distributor, though, especially in the sense that it's been talked about in terms of a lessor or a baler? And in this situation where Amazon, at least my understanding of the facts here, you had a third-party seller, but Amazon fulfills the product out of its own, I mean, isn't it effectively a baler at that point? No. So a commercial baler or lessor, they are choosing to source a product and then they're providing it directly to the plaintiff for some commercial purpose. I'd like leasing a boat. Maybe you have a washing machine. You said the word source. You've said that a couple of times. Yeah. What do you mean by that? So when we say source, we mean they make the decision of what product to sell, what the actual seller or a commercial lessor does. What product are we going to lease or sell? Who are we going to get that product from? And then what terms are we going to offer to either buy or lease that product? So when I say source, I mean they're the ones that go out and they select the product, they identify the manufacturer that they want to get it from, and they're the ones that introduce it into the market. Amazon doesn't do anything functionally that has ever been cited as the very basis, the ratio dissidenti, as it were, as the justification for strict liability, which is you choose the product and introduce it into the market. Amazon doesn't do that. That is the core function, which every Minnesota court decision has said, full stop is a prerequisite to imposing strict liability. Amazon does not do that, which is why I think the title argument— Doesn't Amazon decide what is and is not included in its marketing system, what's on its website? They set basic ground rules on what products are and are not for sale under both the business solutions agreement and then the seller marketing products, so like things that are illegal to sell, guns, tobacco. They set some basic ground rules for what the market is, but to your point, Judge Strauss, they don't make individual determinations about each sale, and that would be an impossible burden for Amazon to have to deal with, and there's no kind of evidence in the record that's presented, which again makes this a poor vehicle for deciding, about what would be required to inspect products at this level, and then how would that affect pricing? Could that be distributed in any sort of effective manner? There's no evidence that's presented that would allow the Minnesota court to make a reasonable determination there for what would potentially be a rule that could affect a lot more entities than Amazon. So at that point, I would say even if there's some question about what the rule might ought to be, the better approach, especially under this court's cases, would be to go ahead and decide that decision yourself and leave a later decision for the Minnesota Supreme Court if the issue does reach them on a fuller record with more claims so they're able to address the issue overall. I mean, I was looking back. I struggle to find like any questions that this court has certified in the last decade, and they certainly have not certified one where all of the case law goes one way and the request for certification is made in the alternative. And certainly after a district judge did all of the work to decide the decision and made the decision herself to not certify the question, which I think is another thing counseling in our favor. Judge Wright did the work, wrote an excellent opinion, and explained fully why there was more than enough data for her to go ahead and make the call. One thing about that that I found interesting is she relies on her own opinion from the court of appeals. So we literally have one judge, I guess a panel, but that's an easy thing to do. And if you don't mind, I see that I'm out of time, but to just respond to you, I would respectfully suggest, just like I hope you don't trade on your insider knowledge, I don't know that that gives her any special right, but I do think that it is know whether you read the decision and how well that it's done that there is an intimate understanding of Minnesota law, how Minnesota courts decide the decisions, and I have never seen this court certify a case in similar circumstances. And to be consistent with the standard, this court ought to treat this case like all the others before it. Thank you. Thank you. I can't tell you how much I love this case. I really do. And one thing I appreciate about it is very, very competent opposing counsel, and we've gotten along famously throughout the case. They've been a pleasure to work with. I like it in part because I feel, as a native Minnesotan, like I'm stepping up for the consumers of Minnesota, you know, to that extent. Usually I'm shuffling money between two insurance companies, and we like to say keep a little for ourselves. But, you know, not here. I feel like the exception of doing something nobler, if you will. I guess there was kind of a shotgun approach in my mind, so I want to throw a few first other questions that you have for me in my limited time left. Let me fire away then. One of the grievances that I heard was that we've kind of not proposed a clear rule to define who is in and who is out, to whom does the doctrine apply and to whom does it not apply. And I would posit that we do have clear guidance from both the underlying principle and the third restatement. Ms. Mahoney handed me a case, Caps v. Biosense, Webster, Inc., footnote 25. It's a district of Minnesota opinion, and it says, as noted the Minnesota Supreme Court cited with apparent approval the third restatement. So I think we do have some support for clearly the underlying policy from the Minnesota Supreme Court and also some indication about their adherence to the third restatement. You know, opposing counsel says all the cases are, well, seven-three out of state, but then all the Minnesota cases are against you. I just want to give you a chance to respond to that. Sure. Yeah, I think the most instructive of the Minnesota cases probably is the Lizoff case where there's a bailment of a propane tank, and there the court said that applying the doctrine to a commercial bailor serves the underlying purpose, meets the requirements, meets restatement, specifically 20B, and seems to be consistent with other state rules. That intermediate appellate court said, I'm not going to go first. The Minnesota Supreme Court hasn't ruled on it yet. The legislature hasn't ruled on it yet, so I'm not going to go first. And for that reason and another reason, they declined to apply the doctrine to a bailor, which is clearly called for in the third restatement and clearly consistent with the underlying goal. The other cases, Tabish and Bremer, in my mind, are similar in the sense that they're both situations where a retailer, one of a bicycle, one of a forklift, asked some other party or third party to either assemble or inspect this thing. That third party, unlike Amazon, unlike wholesalers, unlike lessors, bailors is not in a position to protect consumers from unsafe products by exerting pressure up the distribution chain like Amazon can. Amazon controls the keys to the kingdom. And if I could just briefly say, I'm so glad that counsel spoke to the Ohio Supreme Court decision Steiner and the McMillan decision, the Wisconsin decision. Two cases that he cited were Steiner and Erie, Ohio Supreme Court in the Fourth Circuit. Both of those cases had concurring opinions that I think are very well worth a good read because in both of those cases, the judges seem to believe what I'm trying to argue to you, that this doctrine squarely applies to them but for one issue, passage of title. Very well. Thank you, sir. Your time has expired. It is an interesting case that we will wrestle with and decide in due course. We appreciate both counsels having a good civil relationship and your appearance and argument today. So thank you very much and you may be excused.